**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 30, 2015[*]
Decided April 1, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 14-1742

| | |
|---|---|
| LASHUNDA D. HALL, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| | |
|     *v.* | |
| | No. 11 C 3787 |
| ILLINOIS BELL TELEPHONE | |
| COMPANY, | James B. Zagel, |
|     *Defendant-Appellee*. | *Judge*. |

**O R D E R**

LaShunda Hall appeals the grant of summary judgment for her former employer, Illinois Bell Telephone Company, in this suit asserting that she was disciplined and eventually fired in retaliation for filing charges with the Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-3(a). We affirm.

Hall had worked for Illinois Bell as a telephone technician for more than ten years when, in 2008, her supervisors began reprimanding her for failing to complete

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(B).

work assignments and fill out her timesheet properly. In early 2009 Hall filed the first of her EEOC charges, alleging sex discrimination in being denied training and being treated less favorably than male employees. Over the next year, she was disciplined in various ways—counseling, verbal and written warnings, and a one-day suspension—for failing to complete her timesheet properly, to alert management about customer service delays, to connect a wire and thereby causing interruptions in customers' service, to follow procedures for ordering technician equipment, to adhere to time-management procedures, and to inform management when she escorted a city inspector around the building.

Toward the end of 2009, Hall asserts, Illinois Bell concocted a reason to suspend her for three days—taking too long to perform an inspection—and she responded by filing a second charge with the EEOC, this time alleging retaliation for her first EEOC charge. She points to a comment by a former supervisor that was made at a meeting called in response to her violations. Hall's prior EEOC charge was brought up by her former supervisor, Donna Ford, as evidence that, in Hall's view, her EEOC filing was the reason she should face disciplinary actions. After her suspension, Hall continued to receive counseling to address her unsatisfactory work performance and time management.

In mid-2010 Illinois Bell's area supervisor Ken Harn fired Hall after she failed to properly connect a customer's telephone wires. A company investigation determined that Hall had over-reported on her timesheet the time she took on the wiring and then lied about her reasons for not completing the wiring correctly. Based on these findings and her disciplinary history, Harn, according to testimony he gave at an arbitration over Hall's firing, decided to discharge Hall. Soon after her discharge, Hall filed a third charge with the EEOC alleging that she was disciplined and discharged in retaliation for her previous EEOC charges.

Hall then filed this retaliation suit, asserting generally that other employees were not disciplined for making the same errors and that she was singled out by the company because of her EEOC charges. After discovery, Illinois Bell moved for summary judgment, asserting that it fired Hall because of continuous poor performance.

The district court granted summary judgment for Illinois Bell, determining that Hall offered no evidence of retaliation under either the direct or indirect method of proof. Under the direct method, the court explained, Hall provided no evidence of a

causal link between her filing EEOC charges and her discharge. Nor did she provide an account using circumstantial evidence that would create an inference of retaliation; according to the court, she already had been disciplined before her first EEOC filing, and, in any event, suspicious timing alone is rarely enough to establish causation. Further, the record belied Hall's assertion that the company applied its progressive disciplinary policy to her inconsistently or capriciously. Finally, regarding the indirect method, the court concluded that Hall provided no evidence that any similarly situated employee who did not file EEOC charges was treated more favorably than she was.

On appeal Hall first challenges the district court's analysis under the direct method, and particularly its determination that she failed to provide a pattern of circumstantial evidence from which retaliation could be inferred. She asserts that the court overlooked the pretext of the company's reason for disciplining her—untimeliness in carrying out the inspection—and maintains that Ford's reference to her EEOC charge demonstrates that the company's real reason for disciplining her was this charge. She also points to the suspicious timing between her EEOC filings and Illinois Bell's discipline.

But the district court correctly found that Hall failed to provide a pattern of circumstantial evidence sufficient to raise an inference of retaliation. First, "ambiguous or isolated comments that stand alone are insufficient" to raise an inference of retaliation. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012). Ford's comment—made three months before Hall's discharge—was isolated and, as the district court noted, was too ambiguous to be conclusive evidence of retaliation. Second, the district court also correctly noted that the timing of Hall's discipline was not enough to establish a causal connection between her EEOC charges and the adverse actions. Even before she filed her first EEOC charge, Hall had already been disciplined for her work performance. When an employee is disciplined for the same violation before filing a charge of discrimination, this discipline "undermines the reasonableness of any inference" that the charge triggered any later discipline. *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). Moreover, the most suspicious timing in Hall's case is her suspension 41 days after she filed her second EEOC charge, but the district court was correct that timing alone is rarely enough to establish a causal link. *See Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 389–90 (7th Cir. 2012).

As for the indirect method, Hall challenges the district court's conclusion that she did not identify any similarly situated employee who received more favorable

treatment. She maintains that the three fellow technicians who also had timesheet errors but were not disciplined—Kevin Walker, Cody McCray, and Danielle Kelly—were all similarly situated. She also says that she was similarly situated to Galatian Norman, another technician, in that both of them held the same job title and responsibilities and shared the same area supervisor, Ken Harn.

As the district court determined, none of these employees were similarly situated. Employees are similarly situated "if they had the same supervisor, were subject to the same employment standards, and engaged in similar conduct." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013) *citing South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 753 (7th Cir. 2007). Unlike these three technicians, Hall had a record of repeated violations of company policy. As for Norman, Hall failed to provide evidence showing how he was "substantially similar" to her; he was not assigned to the same office as Hall, nor did he report to the same direct supervisor.

Finally Hall attempts to introduce new documents into the record—emails addressing varied topics such as promotions, vacation time, work assignments, her discomfort with personal questions from her supervisor, and attendance reports; requests to see her personnel file; and a confidential settlement offer. But she does not suggest their relevance, and, in any event, we will not consider such documents that were not part of the record in the district court. *See* FED. R. APP. P. 10(a).

AFFIRMED.